**ORIGINAL**

# In the United States Court of Federal Claims

No. 13-760C

(Filed: December 30, 2014)

**FILED**

DEC 3 0 2014

U.S. COURT OF
FEDERAL CLAIMS

NOT FOR PUBLICATION

|  |  |
|---|---|
| JOSEPH FRANK PIOTROWSKI, | ) RCFC 12(b)(1); Subject Matter |
| | ) Jurisdiction; Military Pay Act (37 U.S.C. |
| Plaintiff, | ) § 204); 10 U.S.C. § 3911; Statute of |
| | ) Limitations (28 U.S.C. § 2501); 28 U.S.C. |
| v. | ) § 1491 (a)(2); Administrative Procedures |
| | ) Act; Fifth Amendment; Eighth |
| THE UNITED STATES, | ) Amendment; Promissory Estoppel; |
| | ) Fraudulent Misrepresentation; Collateral |
| Defendant. | ) Attack on Court-Martial Proceedings |
| | ) |

Joseph Frank Piotrowski, Cross City, FL, pro se.

William P. Rayel, Trial Attorney, with whom were Stuart F. Delery, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant. Maj. Nicole L. Fish, Litigation Attorney, Military Personnel Branch, United States Army Litigation Division, of counsel.

## ORDER and OPINION

CAMPBELL-SMITH, Chief Judge

Pro se plaintiff Joseph Frank Piotrowski (plaintiff or Mr. Piotrowski) filed this military pay action against the United States Army (Army or defendant).[1]  Plaintiff

---

[1]     The caption of plaintiff's Complaint also lists as additional defendants "John McHugh, Secretary of the Army, et. al."  Compl., ECF No. 1, at 1; see also id. ¶ 12 (attempting to sue the Secretary McHugh "in his official capacity").  Claims for relief against any party other than the United States, including officers of the United States government, "must be ignored as beyond the jurisdiction of the court."  United States v. Sherwood, 312 U.S. 584, 588 (1941); see Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials.").  Thus, to the extent that plaintiff is alleging claims against the Secretary of the Army in his individual

asserts several claims arising out of his twenty-four years of service in the Army and a 2001 court-martial conviction resulting in plaintiff's imprisonment, forfeiture of pay, and dismissal from service. Plaintiff argues, inter alia, that the Army acted contrary to law by not approving his request to retire by December 1, 2000—prior to the events leading to his court-martial conviction. Plaintiff seeks past and future retirement pay as well as other relief.

Before the court are the Complaint,[2] ECF No. 1, attached to which are plaintiff's exhibits[3] (Pl.'s Ex.), ECF Nos. 1-1 through 1-3, filed September 30, 2013; defendant's Motion to Dismiss or, in the Alternative, Motion for Judgment on the Administrative Record (Def.'s Mot.), ECF No. 12, filed February 11, 2014, and its corrected appendix (Def.'s App.),[4] ECF No. 15-1, filed February 27, 2014; the Administrative Record (AR),

---

capacity, such claims must be, and are, **DISMISSED** for lack of jurisdiction.

[2]    Plaintiff filed a motion for leave to amend his Complaint on May 27, 2014. ECF No. 24. The court denied plaintiff's motion, finding that "Mr. Piotrowski's proposed amendments [were] either unnecessary or futile." Order, July 3, 2014, ECF No. 26, at 3. Any attempt by plaintiff to renew his motion to amend the complaint in subsequent briefing is also **DENIED**. See Pl.'s Sur-Reply, ECF No. 29, at 14 (arguing that "plaintiff should be permitted to amend the Complaint to bring it into the necessary language where the court could exercise its subject-matter jurisdiction over lost pay"); id. at 25 (arguing that the court "should exercise its discretion to permit the plaintiff to [a]mend the Complaint").

[3]    When citing to the exhibits attached to the Complaint, the court cites to the page number(s) generated by the court's Case Management/Electronic Case Files system.

[4]    Defendant's corrected appendix includes excerpts from several army regulations, including two versions of Army Regulation 600-8-24, which governs Officer Transfers and Discharges. See Def.'s App., ECF No. 15-1, at A6–A30 (Army Reg. 600-8-24 (1995)), A31–A55 (Army Reg. 600-8-24 (2006)). Plaintiff contends that consideration of either the 1995 version or the 2006 version of Army Regulation 600-8-24 would be "inappropriate" because neither was in effect in August of 2000, when plaintiff submitted his retirement request. See Pl.'s Resp., ECF No. 20, at 3, 20. Plaintiff is incorrect.

As defendant correctly observes, see Def.'s Reply, ECF No. 27, at 11 n.7, the 1995 version of Army Regulation 600-8-24 was in effect in August 2000, when plaintiff submitted his retirement request, and the 2006 version of Army Regulation 600-8-24 was in effect both in June 2007, when defendant argues plaintiff was discharged, and in April 2008, when plaintiff alleges he was officially released from active duty.

Defendant's corrected appendix also includes an excerpt from Army Regulation

ECF No. 13, filed under seal February 11, 2014; plaintiff's Response (Pl.'s Resp.), ECF
No. 20, filed May 2, 2014; defendant's Reply (Def.'s Reply), ECF No. 27, filed July 17,
2014; plaintiff's Sur-Reply (Pl.'s Sur-Reply), ECF No. 29, filed August 19, 2014; and
defendant's Sur-Surreply (Def.'s Sur-Reply), ECF No. 30, filed September 2, 2014.

For the reasons stated below, defendant's Motion to Dismiss is **GRANTED**.

I.      Background

Plaintiff began serving in the Army on February 22, 1977. Compl. ¶ 13. By early
2000, plaintiff had served seven of his approximately twenty-four years of service as a
commissioned reserve officer in the rank of Captain and was stationed at the MacDill Air
Force Base in Tampa, Florida. See id. ¶¶ 13–14; Pl.'s Resp. 3–4.

On August 5, 2000, plaintiff was charged with Driving Under the Influence (DUI)
while off-base. Compl. ¶ 15. Two days later, plaintiff's Unit Commander, Lt. Col.
Robert Bethea, Jr. (LTC Bethea), initiated an inquiry regarding plaintiff's DUI and an
alleged misuse of a government-issued credit card. See id. ¶ 17. As a result, a "flag" was
placed in plaintiff's personnel file. See Pl.'s Sur-Reply 18; Pl.'s Ex. C at 6. Army
regulations define a "flag" as "[a]n abbreviated term used to describe the initiation or
removal of a suspension of favorable personnel actions." Army Reg. 600-8-2, Glossary
(1987). "Flags will be submitted when an unfavorable action or investigation (formal or
informal) is started against a soldier by military or civilian authorities." Id. ¶ 1-11.

On August 10, 2000, the investigating official concluded that plaintiff had
engaged in misconduct and recommended that action be taken pursuant to the Uniform
Code of Military Justice (UCMJ). Compl. ¶ 18; Pl.'s Ex. C at 3 (Investigative Findings).
The Army issued plaintiff a letter of reprimand on August 24, 2000. Compl. ¶ 19; Pl.'s
Ex. C at 4 (Mem. of Reprimand).

Also on August 10, 2000, plaintiff requested voluntary retirement at his rank of
O3-E (Captain); plaintiff specifically asked to "be released from active duty and
assignment on 30 November 2000 and [to be] placed on the retired list on 1 December
2000." Id. ¶¶ 14–15; Pl.'s Ex. A at 2–3 (Voluntary Retirement Mem.). Plaintiff contends
that the timely out-processing for his retirement was inhibited by the unlawful presence
of a flag in his personnel file. See Pl.'s Sur-Reply 18–19; cf. Army Reg. 600-8-2
¶ 1-14.h (providing that the presence of a flag prohibits retirement); Def.'s Reply 12
(conceding that a flag inhibits retirement but arguing that plaintiff's retirement was

---

600-8-2, which governs Suspension of Favorable Personnel Actions (Flags). See Def.'s
App. A1–A6 (Army Reg. 600-8-2 (1987)). The court appropriately cites to this version
of the regulation because it was in effect in August and November of 2000, when the
Army placed flags in plaintiff's personnel file.

denied for reasons independent of the flag). Plaintiff contends that the Army should have removed the flag from his personnel file on August 24, 2000—the date on which the Army issued plaintiff the letter of reprimand. See Pl.'s Sur-Reply 18–19, 23; cf. Army Reg. 600-8-2 ¶ 1-12(6) (indicating that a flag should be removed from a service member's personnel file upon the signing of a letter of reprimand). However, the Army did not remove the flag from plaintiff's personnel file until October 30, 2000. Pl.'s Sur-Reply 18; see Compl. ¶¶ 20–23 (explaining the procedures taken to remove the flag from plaintiff's personnel file).

On November 3, 2000, plaintiff met twice with LTC Bethea regarding plaintiff's retirement request. Compl. ¶ 26. Following these meetings, LTC Bethea initiated a second flag against plaintiff, the basis for which the parties dispute. See Def.'s Mot. 4 n.3 (claiming the second flag was a result of plaintiff's failure "to take the requisite steps toward retirement"); Pl.'s Resp. 4–7 (claiming the second flag was a result of plaintiff's failure to agree "that a disciplinary action under UCMJ should hinge on whether . . . he retired by [December 1, 2000]"); Compl. ¶¶ 27–28 (similar).

Also on November 3, 2000, plaintiff's retirement request was denied by Personnel Command (PERSCOM). AR 159. Because plaintiff only had seven years of commissioned service, he was not eligible to retire as a Captain. Id. PERSCOM advised that if plaintiff wished to retire with less than ten years of commissioned service, he must revert to enlisted status and resubmit a voluntary retirement application with the correct retirement grade. Id.

That same day, plaintiff submitted a Personnel Action form, in which he asked to revert to enlisted status and to be retired at the rank of Sergeant first class as of December 1, 2000, consistent with the advice of PERSCOM. Pl.'s Ex. C at 9 (Personnel Action Form); see Compl. ¶ 29; cf. Def.'s Mot. 23 n.16 (claiming that a "Personnel Action form is not the appropriate method of requesting retirement"). Plaintiff's second retirement request was denied four days later, on November 7, 2000. See Compl. ¶ 29; Pl.'s Ex. C at 9 (Personnel Action Form).

In early 2001, the Army initiated a court-martial action against plaintiff related to his DUI. See Compl. ¶ 30; Def.'s Mot. 4; AR 80 (General Court-Martial Order (GCMO)). While this action was pending, plaintiff was charged on February 11, 2001 with a second DUI. See Def.'s Mot. 4; AR 80 (GCMO). Two months later, on April 18, 2001, plaintiff was involved in a third, and fatal, DUI. See Compl. ¶ 30; AR 80 (GCMO).

On June 7, 2002, plaintiff was convicted by general court-martial of, inter alia, involuntary manslaughter and three instances of drunk driving. AR 82 (GCMO). Plaintiff was sentenced "[t]o be reprimanded, to forfeit all pay and allowances, to be confined for 13 years and six months and to be dismissed from the service." Id. Pursuant to a plea agreement, the convening authority suspended all prescribed confinement in

4

excess of twelve years for a period of eight years. Id. at 80, 83. The convening authority also approved the execution of plaintiff's sentence with the exception of his dismissal from service, which was stayed pending the completion of the appellate process. Id. at 83.

On January 31, 2006, the United States Army Court of Criminal Appeals substantially affirmed plaintiff's conviction and sentence.[5] See AR 84–89. The United States Court of Appeals for the Armed Forces denied plaintiff's petition for review on February 8, 2007. AR 247. On April 10, 2007, the Assistant Secretary of the Army for Manpower and Reserve Affairs approved the decision of the United States Army Court of Criminal Appeals, AR 244; see also AR 248, and on May 24, 2007, the Chief of Staff of the Army ordered that plaintiff be dismissed from the Army at midnight on June 7, 2007, AR 245.

In the interim, back in May 2002, while serving his military sentence, plaintiff was indicted by the state of Florida on the charges of DUI manslaughter and vehicular homicide. See AR 78–79. Plaintiff subsequently was found guilty and was sentenced to two consecutive fifteen-year terms, to run concurrently with his military sentence. Id.; Compl. ¶ 31. Plaintiff's military confinement ended in July 2008, but he is currently serving the remainder of his state sentence at Cross City Correctional Institution in Florida. Def.'s Mot. 6; see Pl.'s Resp. 21 (listing Cross City Correctional Institution as plaintiff's address).

On March 31, 2011, plaintiff filed an application with the Army Board for Correction of Military Records (the Board) requesting certain corrections be made to his Certificate of Release or Discharge from Active Duty (DD Form 214), see AR 21–65, including that his Dismissal be changed to Retirement and his Dishonorable characterization of service be upgraded to Honorable, see AR 31–32. On January 18, 2012, the Board granted partial relief by correcting three items on his DD Form 214: the length of his total inactive service, the length of his foreign service, and his military education training. See AR 20. The Board denied the remaining relief requested by plaintiff, including all relief pertaining to retirement and upgrading his discharge to honorable. Id.

Plaintiff filed the instant action on September 30, 2013. Plaintiff makes the following claims in his Complaint: (1) that the Army deprived him of his right to retirement pay and benefits without due process of law; (2) that the Army violated the Administrative Procedures Act (APA) by failing to follow Army regulations that permit service members with more than twenty years of service to retire upon request; (3) that

---

[5]    The United States Army Court of Criminal Appeals reviews all court-martial cases "in which the sentence, as approved, extends to . . . dismissal of a commissioned officer . . . or confinement for one year or more." 10 U.S.C. § 866(b)(1).

the Army breached a promise and intentionally misled plaintiff into believing that he was eligible to retire as a commissioned officer after eight years of service; (4) that the Army violated due process of law and the APA by failing to correct his military records; and (5) that the Army violated the Double Jeopardy Clause of the Fifth Amendment by convicting plaintiff for the DUI and "disregarding the prosecution by the State of Florida for the same offense." Compl. ¶¶ 41–45.

Plaintiff seeks retirement pay from December 1, 2000 through the present, Compl. ¶¶ 6, 46, future retirement pay, id. ¶ 47, reimbursement of certain medical care costs paid for dependents, see id. ¶¶ 6, 38, and correction of his military records "to reflect corrections to his DD-214 [form, concerning] awards, type of discharge, and rank at retirement," id. ¶ 48.[6]

Defendant moves to dismiss plaintiff's Complaint for lack of jurisdiction under Rule 12(b)(1), arguing that plaintiff has failed to allege any money-mandating sources of law and failed to file within the court's statute of limitations. Def.'s Mot. 9–10. In the alternative, defendant moves to dismiss plaintiff's Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6), arguing that plaintiff has not shown that he is entitled to receive retirement pay as a matter of law. Id. at 1, 18. In the further alternative, defendant moves for judgment on the administrative record under Rule 52.1(1)(c), arguing that the Board's decision was in accordance with the law and was not arbitrary, capricious, or an abuse of discretion. Id. at 1, 19.

Because the court finds that its lacks jurisdiction over any of plaintiff's claims,

---

[6]    Plaintiff also requests veterans' benefits. Compl. ¶¶ 6, 47. However, it is well-established that "[t]his court does not have jurisdiction to award veterans' benefits," Ferreiro v. United States, 72 Fed. Cl. 1, 6 (2006) (citing 38 U.S.C. § 511), aff'd, 501 F.3d 1349 (Fed. Cir. 2007); nor can it review veteran benefit determinations of the Department of Veterans Affairs (VA), Collins v. United States, 47 Fed. Cl. 196, 198 (2000) ("The Court of Appeals for Veterans Claims . . . has exclusive jurisdiction to review disability decisions of . . . the Department of Veterans Affairs." (citing 38 U.S.C. § 7252)), aff'd, 243 F.3d 561 (Fed. Cir. 2000) (unpublished); see also Addington v. United States, 94 Fed. Cl. 779, 782 (2010) (stating that the court is "prohibited from reviewing VA benefit determinations" further to title 38 of the United States Code). Accordingly, the court cannot consider plaintiff's claim for veterans' benefits.

Additionally, plaintiff "demands a trial by jury." Compl. ¶ 7. Plaintiff has no right to a jury trial in this court. Ramos v. United States, 112 Fed. Cl. 79, 82 n.3 (2013); accord Order, July 3, 2014, ECF No. 26, at 2 (observing that that "[t]his court does not conduct trials by jury, so plaintiff's request for a jury trial must necessarily be rejected" (citing Lehman v. Nakshian, 453 U.S. 156, 160 (1981)).

pursuant to Rule 12(b)(1), the court does not reach defendant's alternative motions.

## II.    Legal Standards

The Tucker Act establishes and limits the jurisdiction of the Court of Federal Claims. See 28 U.S.C. § 1491 (2012). The Tucker Act affords this court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."[7] Id. § 1491(a)(1). Although the Tucker Act waives the sovereign immunity necessary for a plaintiff to sue the United States for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights upon a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff must identify an independent source of substantive law that creates a right to money damages in order for the case to proceed. Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). This independent source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994).

---

[7]    Plaintiff asserts that Article III, Section II, Clause 1 of the U.S. Constitution and 28 U.S.C. § 1331 serve as additional or alternative bases for this court's jurisdiction over his claims. Compl. ¶ 8. Plaintiff is incorrect as to both assertions.

"'[T]he Court of Federal Claims is an Article I trial court of limited jurisdiction that was created by Congress'; it is not an [A]rticle III court." Sharpe v. United States, 112 Fed. Cl. 468, 475 (2013) (quoting Kanemoto v. Reno, 41 F.3d 641, 644 (Fed. Cir. 1994)). Accordingly, this court's jurisdiction "does not depend on the 'arising under' clause of Article III," or federal question jurisdiction, but rather "'on a separate clause in Article III that authorizes jurisdiction over all controversies to which the United States is a party' and on the Tucker Act." Id. at 475–76 (quoting Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1305–06 (Fed. Cir. 2008)).

Section 1331 of Title 28 governs federal question jurisdiction of the federal district courts. The statute sets forth the "original jurisdiction" of the district courts in "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. However, the Court of Federal Claims is not a district court and, therefore, does not possess jurisdiction over claims arising under 28 U.S.C. § 1331. See Faulkner v. United States, 43 Fed. Cl. 54, 55 (Fed. Cl. 1999) ("The Court of Federal Claims does not have federal question jurisdiction under 28 U.S.C. § 1331." (citing inter alia, Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997))).

A substantive law affords Tucker Act jurisdiction only if it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." Mitchell, 463 U.S. at 217. Thus, Tucker Act jurisdiction exists so long as there is a "fair inference" that the substantive law mandates the payment of money. United States v. White Mountain Apache Tribe, 537 U.S. 465, 473 (2003). The Federal Circuit has "acknowledged that the jurisdictional inquiry and merits inquiry may blend together under the Tucker Act." Doe v. United States, 463 F.3d 1314, 1324 (Fed. Cir. 2006) (citing Fisher, 402 F.3d at 1173). In Fisher, the Federal Circuit explained that if the court concludes the substantive law is money mandating, "the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course." Fisher, 402 F.3d at 1173. And, if the court determines that it has jurisdiction over the cause, "the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted." Id. at 1175–76.

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (2004). When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court accepts as true the undisputed facts in the Complaint and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Although complaints filed by pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Vaizburd v. United States, 384 F.3d 1278, 1285 n.8 (Fed. Cir. 2004), pro se plaintiffs must still meet jurisdictional requirements, Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004) (per curiam); see also Kelley v. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for pro se litigants only.").

A dismissal under RCFC 12(b)(1) "is warranted when, assuming the truth of all allegations, jurisdiction over the subject matter is lacking." Arakaki v. United States, 62 Fed. Cl. 244, 247 (2004) (internal quotation marks omitted). "When a party challenges the jurisdictional facts alleged in the complaint, the court may consider relevant evidence outside the pleadings to resolve the factual dispute." Id. (citing Reynolds, 846 F.2d at 747); see 2 James Wm. Moore et al., Moore's Federal Practice-Civil ¶ 12.30[3] (2014) ("[U]nlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation to the face of the pleadings . . . ."). If the court determines that it does not have jurisdiction, it must dismiss the claim. RCFC 12(h)(3).

The court's six-year statute of limitations is a condition on the Tucker Act's

8

waiver of sovereign immunity and further limits the court's jurisdiction. See Martinez v. United States, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc) ("It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature."). The statute of limitations provides that claims over which the Court of Federal Claims would otherwise have jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim accrues under the Tucker Act "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)).

III.   Discussion

    A.   Plaintiff's Retirement Pay Claim

    1.   Plaintiff Has Alleged a Money-Mandating Source of Law

Defendant argues that plaintiff has failed to identify any money-mandating source of law to support this court's jurisdiction over plaintiff's claim for retirement pay. Def.'s Mot. 11–12; see Fisher, 402 F.3d at 1172. Defendant "presume[s]" that plaintiff bases his retirement pay claim on 10 U.S.C. § 3911, which governs the retirement of reserve commissioned officers. Def.'s Mot. 11; cf. Def.'s Sur-Reply 2 n.1 (stating that "[s]ection 3911 is applicable here because Mr. Piotrowski was an officer").

    Section 3911 provides, in relevant part,

> The Secretary of the Army may, upon the officer's request, retire a regular or reserve commissioned officer of the Army who has at least 20 years of service . . . , at least 10 years of which have been active service as a commissioned officer.

10 U.S.C. § 3911 (emphasis added). Defendant contends that "[t]he plain language of section 3911 vests the Army with discretion to retire an officer when the specified criteria have been [met], but there is nothing in the language of the statute that provides that a service member with 20 years of service is entitled to 'retired' status in the military, or retirement pay." Def.'s Mot. 11–12; see also Def.'s Sur-Reply 2. According to defendant, because 10 U.S.C. § 3911 does not mandate either retirement status or retirement pay, it cannot serve as a basis for the court's jurisdiction. Def.'s Mot. 12.

    Plaintiff does not directly address defendant's argument, but instead, appears to invoke the Military Pay Act, 37 U.S.C. § 204, as a money-mandating source of law. See

Pl.'s Sur-Reply 13–14.[8]  The Military Pay Act provides that "a member of a uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204(a); cf. Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993) (stating that the Military Pay Act entitles reserve officers on active duty to pay and allowances); Sargisson v. United States, 913 F.2d 918, 920 (Fed. Cir. 1990) (indicating same).  That is, section 204 "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service."[9]  Sanders v. United States, 594 F.2d 804, 810 (Ct. Cl. 1979) (en banc), superseded by statute on other grounds by Defense Officer Personnel Management Act, Pub. L. No. 96-513, § 105, 94 Stat. 2835 (1980) (codified as amended at 10 U.S.C. § 628), as recognized in Richey v. United States, 322 F.3d 1317 (Fed. Cir. 2003).

Defendant concedes that the Military Pay Act "may, in certain circumstances, serve as the requisite money-mandating statute to bring a claim within the Court's jurisdiction." Def.'s Sur-Reply 2.  Defendant argues, however, that the Military Pay Act is simply not applicable to plaintiff's claim:

> Mr. Piotrowski has never alleged that he was not paid monies for duties he performed while in service, or that he should have been permitted to remain on active duty.  Rather, he complains that he was kept in the Army too long, and that he should have [been] placed in retired status.

Id.; see id. ("[T]he problem here is not that Mr. Piotrowski failed to mention 37 U.S.C. § 204 in both his complaint and his proposed amended complaint, but rather, that section 204 does not apply to his claim." (internal citations omitted)); cf. Pl.'s Sur-Reply 5 (basing his action on the Army's alleged "illegal retention of the plaintiff in service").

The case law suggests that this court possesses jurisdiction over military retirement pay claims based not on the Military Pay Act, but on the applicable retirement pay statutes.[10]  See, e.g., Loeh v. United States, 73 Fed. Cl. 327, 329 n.6 (2006) (holding

---

[8]     Because plaintiff is proceeding pro se, the court will address this ground as if it properly were pled in his Complaint.  Cf. RCFC 9(j) (requiring a party to enumerate statutory grounds relied upon to support claims); Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam) (stating that the allegations of a pro se complainant are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers").

[9]     Plaintiff misattributes support for his Military Pay Act claim to Eastport S.S. Corp. v. United States, 372 F.2d 1002 (Ct. Cl. 1967) and Austin v. United States, 206 Ct. Cl. 719 (1975).  See Pl.'s Sur-Reply 13–14.

[10]    On at least one occasion, this court has construed a claim for "retirement pay" as one for "back pay" falling under the Military Pay Act.  In West v. United States, 103 Fed.

that, because the subject "military retirement pay statutes . . . are money mandating," it possessed jurisdiction over a discharged Navy service member's retirement pay claim under 10 U.S.C. § 6323 ("An officer of the Navy or Marine Corps who applies for retirement after completing more than 20 years of active service, of which at least 10 years was service as a commissioned officer, may, in the discretion of the President, be retired . . . .")), amended on other grounds by, 74 Fed. Cl. 106 (Fed. Cl. 2006); see also Lewis v. United States, 458 F.3d 1372, 1376 n. 2 (Fed. Cir. 2006) (drawing a distinction between back pay claims arising under the Military Pay Act and "[r]etirement

---

Cl. 55 (2012), an enlisted service member who had served over twenty years in the Army requested voluntary retirement under 10 U.S.C. § 3914, which provides, in relevant part, that "an enlisted member of the Army who has at least 20, but less than 30, years of service . . . may, upon his request, be retired." See id. at 57, 61. At the time of his retirement request, Mr. West was serving a thirty-year sentence in a Texas state prison for sexual assault. Id. at 57. The Army separation board recommended that Mr. West be retired; however, the designee of the Secretary of the Army rejected the separation board's recommendation and honorably discharged Mr. West at the convenience of the government. Id. 57–58. Mr. West "argue[d] that he [was] entitled to a retirement as a matter of law following his more than 20 years of service." Id. at 61.

Similar to defendant's argument here, the government argued that Mr. West failed to allege a money-mandating source of law for his retirement pay claim and that the court therefore lacked jurisdiction over the claim. Def.'s Mot. 6–8, West, 103 Fed. Cl. 55 (2006) (No. 11-321C), ECF No. 18. The court did not directly address the government's argument. Instead, the court interpreted Mr. West's request for retirement pay as a request for back pay resulting from the alleged wrongful discharge brought pursuant to the Military Pay Act:

> At the heart of [Mr. West's] complaint is his contention that he was illegally discharged from the Army when the [designee of the] Secretary of the Army rejected the recommendation of the separation board to 'retire' the plaintiff and instead decided to discharge him from the Army for the convenience of the government.

Id. at 60–61. The court exercised jurisdiction over Mr. West's claim, observing that "[a] claim by a former serviceman of illegal discharge and entitlement to back pay has been held to within the jurisdiction of the court." Id. at 59–60 (citing, inter alia, Sanders, 594 F.2d at 810). The court ultimately granted defendant's motion for judgment on the administrative record, concluding that Mr. West was not entitled to retirement as a matter of law. Id. at 61, 63. The court appears to have collapsed the concepts of "retirement pay" and "back pay" when construing a retirement pay claim (similar to that brought by Mr. Piotrowski here) as one for back pay under the Military Pay Act.

pay claims . . . brought under other money-mandating statutes"—to include 10 U.S.C. § 6323); Ancman v. United States, 77 Fed. Cl. 368, 368, 374 (2007) (finding that the plaintiffs' claim for readjustment of their retirement pay failed to state a claim under the Military Pay Act and further finding that the plaintiffs could have invoked the Air Force's retirement pay statute as a basis of jurisdiction); Kirby v. United States, 201 Ct. Cl. 527, 533 (1973) (stating that "entitlement to active duty back pay and retirement pay arise under different sections of the Code"); cf. Cedillo v. United States, 37 Fed. Cl. 128, 129 (1997) (concluding, without analysis, that the court had jurisdiction over a claim by an Air Force service member that he was improperly denied retirement benefits under 10 U.S.C. § 8914 ("[A]n enlisted member of the Air Force who has at least 20, but less than 30, years of service . . . may, upon his request, be retired")), aff'd, 124 F.3d 1266 (Fed. Cir. 1997); Hare v. United States, 35 Fed. Cl. 353, 354 (1996) (similar), aff'd, 108 F.3d 1391 (Fed. Cir. 1997) (Table).

Here, the Secretary of the Army denied plaintiff's initial request to retire as a commissioned officer pursuant to 10 U.S.C. § 3911 as well as plaintiff's subsequent request to retire as an enlisted member pursuant to 10 U.S.C. § 3914. Had the Secretary of the Army approved either of his requests, plaintiff would have been entitled to retirement pay pursuant 10 U.S.C. § 3929, which provides that "[a] member of the Army retired under this chapter is entitled to retired pay computed under chapter 371 of this title." Accord Ancman, 77 Fed. Cl. at 376 (observing that "[o]nce the Secretary of the Air Force approved plaintiffs' retirement applications, plaintiffs became entitled to retirement pay pursuant to 10 U.S.C. § 8929," which provides that "[a] member of the Air Force retired under this chapter is entitled to retired pay computed under chapter 871 of this title"). Accordingly, the court finds that the Army retirement pay statutes are money-mandating and serve as a basis for this court's jurisdiction over plaintiff's retirement pay claim.

The court's finding that plaintiff has identified a money-mandating source of law resolves only an aspect of the requisite jurisdictional inquiry regarding plaintiff's claim for retirement pay.

2.    Plaintiff's Retirement Pay Claim Falls Outside the Court's Statute of Limitations

a.    Plaintiff's Retirement Pay Claim Accrued in November 2000

Defendant asserts that plaintiff's retirement pay claim is barred by the court's six-year statute of limitations because, according to defendant, plaintiff's retirement pay claim accrued on June 7, 2007—the date his DD Form 214 lists him as separated from service. Def.'s Mot. 2, 10–11; see also Def.'s Reply 4 ("June 7, 2007, is the date [plaintiff's] claim accrued, and he could have immediately challenged his dismissal and loss of retired pay in this Court on that date."). Because plaintiff did not file his Complaint until September 30, 2013, nearly four months after the court's limitations

period had run, defendant argues that the court lacks jurisdiction over plaintiff's retirement pay claim. See Def.'s Reply 2. Plaintiff responds that he was not officially released from active duty until April 1, 2008—the date on which he received his DD Form 214. See Compl. ¶ 36; Pl.'s Resp. 11.

The parties' arguments appear to be premised on the theory that claims for retirement pay based on an alleged wrongful discharge accrue on the date of discharge. Davis v. United States, 108 Fed. Cl. 331, 339–40 (2012), aff'd, 550 F. App'x 864 (Fed. Cir. 2013); Levy v. United States, 83 Fed. Cl. 67, 74 (2008); see Martinez, 333 F.3d at 1303 ("In a military discharge case, this court and the Court of Claims have long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge."); cf. supra Part III.A.1 (concluding that the Army retirement statutes—not the Military Pay Act—serve as the basis of the court's jurisdiction over plaintiff's retirement pay claim).

However, the cases that suggest a service member's claim for retirement pay accrues on the date of his or her discharge are distinguishable from the case at hand. See, e.g., Davis, 108 Fed. Cl. at 340 ("A date-of-discharge rule applies to wrongful discharge claimants seeking back pay, whether labeled by [a plaintiff] as 'back pay,' 'retirement pay,' or 'back retired pay.'"); Levy, 83 Fed. Cl. at 74 ("Because this is a military pay case seeking retirement pay, the applicable start date for accrual of the statute of limitations regarding [the plaintiff's] claims is the date of his actual discharge from the [military]."); Kirby, 201 Ct. Cl. at 527 (finding that the plaintiff's "back pay claim and . . . retirement claim are not severable under the facts of this case even though they arise under different sections of the Code and accrue as the result of different events"). The service members in those cases alleged that they were wrongfully discharged before becoming eligible for voluntary retirement. See, e.g., Davis, 108 Fed. Cl. at 337 ("Plaintiff alleges that the Army violated [its retirement statutes] when it discharged him 'within two years of qualifying for retirement.'"); Levy, 83 Fed. Cl. at 67 ("Plaintiff seeks retirement pay from November 23, 1988, when plaintiff reached 62 years of age, based on qualifying years of service that he would have completed had he not been discharged from the United States Army Reserve in 1958."); Kirby, 201 Ct. Cl. at 532 ("[P]laintiff attempts to draw a distinction between the active duty claim and the retirement claim by arguing that if the [1963] discharge is found to be illegal as a matter of law, then he should receive constructive credit for the years still to be served under his last 6–year enlistment contract up to July 9, 1967, at which point he could have retired with more than 20 years of active service to his credit."). That is, those claims for retirement pay were "founded on the assertion that the claimant[s] had been improperly discharged (more than six years before suit) and except for that invalid separation [they] would have continued to serve until [becoming] eligible for retirement." Carlin v. United States, 578 F.2d 1391 (Ct. Cl. 1978) (interpreting Kirby, 201 Ct. Cl. at 532–540); see Kirby, 201 Ct. Cl. at 532 (stating that the "plaintiff's pyramid of presumptions" in that case were "based upon voiding [his] discharge").

13

In contradistinction, the plaintiff in this case contends that he should have been retired several years prior to his discharge from service; thus, plaintiff's asserted retirement pay claim is not based upon an effort to void an alleged unlawful discharge. Having served over twenty years, plaintiff argues he was eligible for voluntary retirement when he submitted his retirement request pursuant to 10 U.S.C. § 3911 on August 10, 2000. Compl. ¶ 14; Pl.'s Ex. A at 2–3. Plaintiff's request was denied on November 3, 2000. AR 159. Plaintiff submitted a second retirement request that same day pursuant to 10 U.S.C. § 3914, see Pl.'s Ex. C at 9, which was denied on November 7, 2000, see Compl. ¶ 29; Pl.'s Ex. C at 9. Had the Secretary of the Army approved either of plaintiff's retirement requests, plaintiff would have been entitled to retirement pay. See 10 U.S.C. § 3929. It is the court's view that all the events that fixed the liability of the government occurred no later than November 7, 2000. See Martinez, 333 F.3d at 1303 (stating that a claim accrues under the Tucker Act "when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for money" (internal quotation marks omitted)). This finding is further supported by the fact that plaintiff's requested start date for retirement pay was December 1, 2000. See Compl. ¶¶ 6, 46; cf. Pl.'s Ex. A at 2–3 (Voluntary Retirement Mem.) (requesting that he be "placed on the retired list on 1 December 2000"). Accordingly, plaintiff's retirement pay claim accrued in November 2000, and the filing of his Complaint on September 30, 2013 falls well outside the court's six-year statute of limitations.

b.     The Accrual of Plaintiff's Retirement Pay Claim Is Not Subject to Tolling

Plaintiff contends that the accrual suspension doctrine, the "half-a-legal-loaf" doctrine, and the continuing claims doctrine apply to toll the accrual of his retirement pay claim. The court addresses each of plaintiff's arguments, in turn, and concludes that the accrual of plaintiff's retirement pay claim is not subject to any of the doctrines proffered by plaintiff.

i.     Accrual Suspension Doctrine

The accrual suspension doctrine provides "that the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." Martinez, 333 F.3d at 1319. To come within the ambit of the accrual suspension doctrine, a plaintiff "must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date."[11] Id. (internal

---

[11]     The doctrine is to be "strictly and narrowly applied," Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985), and "it is not necessary that the plaintiff obtain a complete understanding of all the facts before the tolling ceases and the statute begins to run," Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988). "Indeed, absent active concealment by defendant, accrual suspension requires

quotation marks omitted).

Plaintiff's arguments in support of the application of the accrual suspension doctrine to his retirement pay claim are based on the view that his claim accrued on his date of discharge. See Pl.'s Resp. 10–13; Pl.'s Sur-Reply 9–10. However, having found that plaintiff's retirement pay claim accrued when the Secretary of the Army denied his requests for retirement, see supra Part III.A.2.a, and given that plaintiff does not allege the Secretary's denial of his retirement requests were "inherently unknowable," plaintiff cannot avail himself of the accrual suspension doctrine here.

ii.     Half-a-Legal-Loaf Doctrine

Plaintiff also attempts to invoke the "half-a-legal-loaf" doctrine, which, if applicable, would restart the statute of limitations on his retirement pay claim. See Pl.'s Resp. 9–10; Pl.'s Sur-Reply 8–9. The half-a-legal-loaf doctrine provides that when the Board "grants favorable relief to an applicant, it may not stop short of granting full relief." Teichman v. United States, 65 Fed. Cl. 610, 617 (2005), dismissed, 143 F. App'x 347 (Fed. Cir. 2005), order recalled and vacated, 143 F. App'x 364 (Fed. Cir. 2005), aff'd, 162 F. App'x 977 (Fed. Cir. 2006); see Eurell v. United States, 566 F.2d 1146, 1149 (Ct. Cl. 1977) ("[T]he 'half-a-loaf' doctrine normally applies to those cases in which the administrative body decides that the claimant should prevail on a certain claim and that relief is appropriate, but it arbitrarily awards less than the full appropriate relief (when requested by the plaintiff) for the claim it recognizes."). "Failure of the Board to grant full relief results in . . . 'a new cause of action' or a 'continuing claim' which revives the limitation period," Homcy v. United States, 536 F.2d 360, 364 (Ct. Cl. 1976), the theory being that once the Board "decides that relief is proper, it cannot arbitrarily decide to give 'half-a-legal-loaf,'" Rumph v. United States, 228 Ct. Cl. 855, 857 (1981); see Eurell, 566 F.2d at 1149 ("Once an administrative body has made a decision that relief is proper, then it has a duty to grant thorough and fitting relief." (internal quotation marks omitted)).

Plaintiff appears to argue that because the Board granted him partial relief by correcting three items on his DD Form 214 but did not grant him the full relief that he requested (e.g., clemency and upgrading his discharge to honorable), he can avail himself of the half-a-legal-loaf doctrine. See Pl.'s Resp. 9–10. However, the doctrine only applies "where the relief sought should have followed as a matter of law from the partial relief granted by the [Board], and when the claimant was required to seek administrative relief before coming to the court." Rumph, 228 Ct. Cl. at 857; cf. Pl.'s Sur-Reply 8 (conceding same).

Plaintiff has not been denied any relief to which he is entitled as a matter of law

what is tantamount to sheer impossibility of notice." Rosales v. United States, 89 Fed. Cl. 565, 578 (2009).

based upon the relief granted by the Board. The Board made three corrections to plaintiff's DD Form 214: it decreased the length of his inactive service by approximately four months, it increased his length of his foreign service by approximately three months, and it added a Physician Assistant Readiness and Recertification Course to his military education training. AR 18–20. As defendant notes, "Mr. Piotrowski does not identify any monetary relief, and there is none, that he is legally entitled to receive as a result of the three corrections made to his DD Form 214." Def.'s Reply 4. The court agrees with defendant that plaintiff has received all of the relief to which he is entitled and has thus received a "full loaf." See id. (citing Eurell, 566 F.2d at 1149). Accordingly, plaintiff cannot avail himself of the half-a-legal-loaf doctrine here.[12]

### iii.     Continuing Claims Doctrine

Plaintiff next argues that the continuing claims doctrine extends the limitations period on his retirement pay claim. Pl.'s Resp. 14. The continuing claims doctrine applies when a plaintiff's claim is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997). "In such cases, the continuing claims doctrine operates to save later arising claims even if the statute of limitations has lapsed for earlier events." Ariadne Fin. Servs. Pty. Ltd. v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998). Notably, "a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim." Brown Park Estates-Fairfield Dev. Co., 127 F.3d at 1456.

Plaintiff's invocation of the continuing claims doctrine is misplaced. Plaintiff's retirement pay claim is based on a single distinct event—the denial of his request for retirement. Plaintiff's retirement pay claim is not a continuing claim that accrues each time an alleged monthly retirement payment is due. See Davis, 108 Fed. Cl. 343 (rejecting similar argument). In other words, plaintiff's retirement pay claim "accrue[d] 'at one time, once and for all,' . . . even though the asserted obligation to pay the plaintiff . . . continues."[13] See Martinez, 333 F.3d at 1304 (stating similar with respect to a

---

[12]     Because plaintiff plainly fails to satisfy the first factor of the Rumph test, the court deems it unnecessary to address whether plaintiff was required to seek administrative relief with the Board prior to filing his action in this court. See Rumph v. United States, 228 Ct. Cl. 855, 857 (1981); Pl.'s Sur-Reply 6, 9–10 (addressing the second Rumph factor); Def.'s Sur-Reply 4–5 (same).

[13]     Moreover, the "independent and distinct wrongs" alleged by plaintiff—including the Army's failure to remove the flag from his personnel file and the Army's initiation of UCMJ proceedings against plaintiff, see Pl.'s Resp. 14—all occurred more than six years prior to the filing of plaintiff's Complaint. Thus, even if these events did, as plaintiff alleges, "give[] rise to a separate cause of action," see id. at 15, they would still fall

plaintiff's claim for back pay). Thus, the continuing claims doctrine does not apply to plaintiff's retirement pay claim.

Because none of the cited doctrines apply to toll claim accrual, the court lacks jurisdiction over plaintiff's retirement pay claim.

B.      Plaintiff's APA Claim

Plaintiff further alleges that the Army violated the APA, 5 U.S.C. §§ 701–706, by failing to follow Army regulations regarding retirement of Army personnel with more than twenty years of active service. Compl. ¶¶ 33, 42; Pl.'s Sur-Reply 24. The APA provides that "[a] person suffering [a] legal wrong because of an agency action, or adversely affected or aggrieved by [an] agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "The APA waives the sovereign immunity of the United States only for '[a]n action in a court of the United States seeking relief other than money damages.'" James v. Caldera, 159 F.3d 573, 578 (Fed. Cir. 1998) (quoting 5 U.S.C. § 702). This court's Tucker Act jurisdiction is limited to claims for monetary damages, see 28 U.S.C. § 1491(a)(1); Testan, 424 U.S. at 398, or to equitable relief ancillary to a money judgment, see infra Part III.H. Accordingly, the court is without jurisdiction to consider challenges to agency action under the APA. See Martinez, 333 F.3d at 1313 ("[T]he Court of Federal Claims lacks APA jurisdiction . . . ."); Strougher v. United States, 89 Fed. Cl. 755, 763 (2009) ("Federal district courts—not the Court of Federal Claims—are the proper fora for APA actions.").

C.      Plaintiff's Constitutional Claims

Plaintiff also asserts claims pursuant to various provisions of the U.S. Constitution, including the Fifth Amendment and the Eighth Amendment. Compl. ¶¶ 5, 8–9; see also id. ¶ 45 (claiming that the Army "violated the plaintiff's rights under the Double Jeopardy Clause of the Fifth Amendment"). In addition, plaintiff contends that the Army "deprived the plaintiff of due process and equal protection under the law," id. ¶¶ 2, 35, 41; see also id. ¶¶ 41, 44 (claiming other due process violations), which the court construes as based on the Fifth and Fourteenth Amendments.

"In order for this Court to have jurisdiction over constitutional . . . claims, the claims must be money mandating." Tasby v. United States, 91 Fed. Cl. 344, 346 (2010) (citing Mitchell, 463 U.S. at 216). None of the constitutional provisions upon which plaintiff relies can fairly be interpreted as money-mandating. See, e.g., Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) (per curiam) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment is not a money-mandating provision." (internal quotation marks omitted));

---

outside the court's statute of limitations.

17

James, 159 F.3d at 581 (observing that the Double Jeopardy Clause of the Fifth Amendment is not money mandating); LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) ("[T]he Due Process Clauses of the Fifth and Fourteenth Amendments [and] the Equal Protection Clause of the Fourteenth Amendment . . . [are not] a sufficient basis for jurisdiction because they do not mandate payment of money by the government."). Because violations of these constitutional provisions do not create a right to money damages, the court does not have jurisdiction over plaintiff's constitutional claims.

> D.     Plaintiff's Contract and Promissory Estoppel Claims

Plaintiff appears to argue that the Army violated a contractual agreement by not allowing him to retire. See Compl. ¶¶ 4, 39. To the extent that plaintiff is alleging that the Army violated his enlistment agreement, see AR 412–15 (Enlistment Agreement), it is well-established that "[e]nlistment agreements are not contracts enforceable under the Tucker Act," Andrews v. United States, 550 F. App'x 886, 888 (Fed. Cir. 2014) (citing Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985)). Rather, a service member's "entitlement to pay is dependent upon [a] statutory right." Bell v. United States, 366 U.S. 393, 401 (1961); see also Schism v. United States, 316 F.3d 1259, 1276–77 (Fed. Cir. 2002) (en banc) ("[T]he plaintiffs' claim for breach of . . . contract for retirement health benefits is defeated by the principle that statutes govern entitlement to these benefits, not any contracts between the recruit and the government."). Accordingly, the court lacks jurisdiction over plaintiff's breach of contract claim.

Plaintiff also contends that the Army broke its "promise" to allow plaintiff to retire as a commissioned officer through a Time in Service (TIS) Waiver.[14] Compl. ¶ 43; see also id. ¶¶ 25, 32. Plaintiff contends that "at a formal Career Status Presentation for [Physician Assistants]," an Army representative "promise[d]" that "the TIS Waiver for retirement as a commissioned officer (8 years), was being extended until 30 Sept. 2001." Id. ¶ 43; see also id. ¶ 25 (alleging that he had been promised that he was "eligible for retirement at the highest rank obtained and vested"). Plaintiff appears to allege a promissory estoppel claim. Cf. Restatement (Second) of Contracts § 90(1) (1981) (providing that promissory estoppel involves "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance"). This court, however, lacks jurisdiction over promissory estoppel claims, "as it requires the finding of a contract

---

[14]     To be eligible to retire as an officer, the Secretary of the Army could reduce the requirement that officers serve at least ten years in commissioned service to a period of not less than eight years. 10 U.S.C. § 3911(b) (2000); see also Army Reg. 600-8-24 § 6-14(c)(1) (1995) ("[A] commissioned officer with 20 years [of active federal service] (of which 10 years is active commissioned service (8 years if waived . . .)) may on his or her request and the approval of the Secretary of the Army be retired (10 USC 3911).").

implied-in-law against the Government, for which there has been no waiver of sovereign immunity." Sinclair v. United States, 56 Fed. Cl. 270, 281 (2003) (citing Hercules, Inc. v. United States, 516 U.S. 417, 423–24 (1996)); see Steinberg v. United States, 90 Fed. Cl. 435, 444 (2009) ("This court has no jurisdiction to hear a claim for promissory estoppel, and to the extent plaintiff substantively asserts the elements for promissory estoppel, dismissal for lack of jurisdiction under 12(b)(1) is appropriate." (internal citations omitted)). The court therefore lacks jurisdiction over plaintiff's breach of promise claim.

E.    Plaintiff's Fraudulent Misrepresentation Claims

Plaintiff also makes two fraudulent misrepresentation claims—that the Army "intentionally misled" him into entering an enlistment agreement, Compl. ¶ 34, and into believing that he was eligible to retire as a commissioned officer, id. ¶¶ 32, 43. These claims sound in tort. See Restatement (Second) of Torts § 525 (1977) ("One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other . . . ."). This court lacks jurisdiction over claims that sound in tort. 28 U.S.C. § 1491(a)(1); see also Copar Pumice Co. v. United States, 112 Fed. Cl. 515, 537 (2013) ("Misrepresentation claims fall outside the court's jurisdiction under the Tucker Act, which bars this court from hearing claims 'sounding in tort.'" (internal citation omitted)). Accordingly, the court does not possess jurisdiction over plaintiff's fraudulent misrepresentation claims.

F.    Plaintiff's Collateral Attack on His Court-Martial Conviction

Plaintiff argues that the Army acted outside its jurisdictional authority when it initiated court-martial actions against him following his August 2000 DUI. See Pl.'s Resp. 16, 19. Plaintiff contends that the Army's court-martial actions "violated double jeopardy protections" because he had already received a letter of reprimand, his on-base driving privileges had been suspended, and the state of Florida intended to prosecute him for his DUI. Id. at 17; see also Compl. ¶ 5. In plaintiff's view, "[a]bsent the illegal act of attempting to prosecute the plaintiff for crimes already punished, the [Army] would have had no jurisdiction over plaintiff in April 2001 to initiate court[]-martial [proceedings] for the [subsequent] fatal DUI." Pl.'s Resp. 18; see also id. at 3 ("[I]f defendant was found to lack jurisdiction to prosecute the initial DUI, all subsequent actions, including the courts-martial, would be invalidated . . . .").

The court construes plaintiff's claim as a collateral attack on his court-martial conviction. This court "can examine court-martial proceedings only in those rare instances where a serviceman who has been convicted in a court-martial trial sues in our court for back pay and collaterally attack[s] the court-martial proceedings on the ground that he was deprived of his constitutional rights in such proceedings." Artis v. United States, 506 F.2d 1387, 1391 (Ct. Cl. 1974) (emphasis omitted)). That is, a plaintiff may collaterally attack a court-martial conviction in this court on the grounds that the court-

19

martial proceedings were so "depriv[ed] of fundamental fairness" that they impaired the plaintiff's due process rights. Bowling v. United States, 713 F.2d 1558, 1561 (Fed. Cir. 1983); see Longval v. United States, 41 Fed. Cl. 291, 295 (1998) (stating that this court may only review court-martial proceedings if a plaintiff can establish "by clear and convincing evidence that: (1) significant constitutional defects existed that deprived [the plaintiff] of due process; (2) the court-martial proceeding lacked fundamental fairness, and (3) the court's reexamination does not amount to a retrial of the case").

Here, however, the court need not consider whether plaintiff can satisfy these elements because plaintiff's attempt to collaterally attack his court-martial conviction is barred by the court's statute of limitations. Plaintiff was convicted by a general court-martial on June 7, 2002. AR 81. His conviction became final on February 8, 2007, when the Court of Appeals for the Armed Forces denied plaintiff's petition for review. AR 247. Accordingly, plaintiff's claim accrued no later than February 8, 2007, and the filing of his Complaint on September 30, 2013 falls outside the court's six-year statute of limitations.

The court further observes that plaintiff has waived his opportunity to raise a collateral attack on his court-martial conviction. Absent a showing of "good cause and prejudice," "a plaintiff seeking to collaterally attack a court-martial conviction on constitutional grounds . . . waive[s] his constitutional claims by failing to raise them at all in the military justice system." Martinez v. United States, 914 F.2d 1486, 1488 (Fed. Cir. 1990) (internal quotation marks omitted); see also Moore v. United States, 61 Fed. Cl. 146, 150–51 (2004) ("A claim not raised in the military courts is waived for the purposes of . . . collateral review."), aff'd, 121 F. App'x 857 (Fed. Cir. 2005). Plaintiff appealed his court-martial conviction to both the Army Court of Criminal Appeals and the Court of Appeals for the Armed Forces, see AR 84–89, 247, and did not raise this argument before either tribunal, see Attachments to Answer and Return at 236–66, 284–306, Piotrowski v. Commandant, USDB, 2009 WL 5171780 (D. Kan. Dec. 22, 2009) (No. 08-3143-RDR), ECF No. 14-2 (plaintiff's briefs before the Army Court of Criminal Appeals and Court of Appeals for the Armed Forces). Because plaintiff does not allege good cause for his failure to do so, plaintiff's claim is waived. See Moore, 121 F. App'x at 860 (finding that a plaintiff's failure to show "where in the record he adequately put the military tribunals on notice of his double jeopardy claim" resulted in a waiver of his argument).

G.    Plaintiff's Request for Reimbursement of Certain Medical Costs

Plaintiff requests reimbursement for certain medical costs incurred by his dependents between June 7, 2007 and April 1, 2008. See Compl. ¶¶ 6, 38. As defendant correctly observes, see Def.'s Mot. 26, when a service member seeks relief from a military corrections board before bringing suit in this court, any argument not previously raised before the board is waived, see Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006) ("[A] plaintiff may waive an argument with respect to [a non-jurisdictional] issue by not asserting it before the Board."); Doyle v. United States, 599 F.2d 984, 1000 (Ct. Cl. 1979) ("It has long been part of our law that a party cannot raise an issue on appeal to

a court when it failed to raise it before an administrative agency competent to hear."), amended on other grounds by, 609 F.2d 990 (Ct. Cl. 1979). The record reflects that plaintiff did not raise his claim for medical care costs before the Board. Accordingly, plaintiff has waived his opportunity to raise this claim.

      H.    Plaintiff's Request for Correction of His Military Records

Plaintiff also requests that the court correct his military records "to reflect corrections to his DD-214 [form, concerning] awards, type of discharge, and rank at retirement." Compl. ¶ 48; cf. Compl. ¶ 4 (claiming that the Army failed to "correct military records to properly reflect [his] date of retirement"). Pursuant to 28 U.S.C. § 1491(a)(2), the court may order the correction of military records if it is "incident of and collateral to" a money judgment. Section 1491(a)(2) provides:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

Stated another way, the court has no authority to grant equitable relief "unless it is tied and subordinate to a money judgment." James, 159 F.3d at 580 (internal quotation marks omitted). Where, as here, the court lacks jurisdiction to grant monetary relief, it also lacks jurisdiction to correct military records.

IV.    Conclusion

As addressed more fully above, the court finds that is without jurisdiction over plaintiff's claims. As such, defendant's motion to dismiss for lack of jurisdiction is **GRANTED**. Plaintiff's claims are dismissed without prejudice.

      IT IS SO ORDERED.

                                        PATRICIA E. CAMPBELL-SMITH
                                        Chief Judge